**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ADAM GAYAR** | : | Case No. 1:17cv447 |
| 2306 Ohio Avenue, Apt. 12 | : | |
| Cincinnati, OH 45219 | : | |
| | : | **Judge** |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| **UNIVERSITY OF CINCINNATI** | : | |
| **COLLEGE OF MEDICINE,** | : | |
| 3230 Eden Avenue | : | |
| Cincinnati, OH 45267 | : | |
| | : | |
| Defendant. | : | |

_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiff Adam Gayar, for his Complaint against the University of Cincinnati College of Medicine, states as follows:

**I. PRELIMINARY STATEMENT**

1. This is a civil rights action arising out of the decision of the University of Cincinnati College of Medicine (UC COM) to dismiss Mr. Gayar from its medical education program prior to him receiving his MD and by refusing to readmit him into the program. Specifically, Mr. Gayar alleges that UC COM violated his rights under federal law to be free from discrimination on account of a disability while participating in a program offered by a public entity receiving federal financial assistance.

2. Mr. Gayar seeks reinstatement into UC COM's medical education program, compensatory damages for any and all economic and non-economic injuries

he suffered as a proximate result of Defendant's discriminatory actions, and an award of his reasonable attorney's fees and costs.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Mr. Gayar's federal claims pursuant to 28 U.S.C. § 1331, which provides for original subject matter jurisdiction in federal district courts with respect to claims brought under the Constitution or the laws of the United States.

4. Venue with this Court is appropriate because UC COM is located in the Southern District of Ohio and all of the actions complained of herein occurred within this judicial district.

## III. PARTIES

5. Mr. Gayar is a United States citizen and a legal resident of the state of Ohio. Mr. Gayar is a qualified individual with a disability as that term is used in and contemplated by the terms and conditions of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973 (RHA), 29 U.S.C. § 794(a).

6. UC COM is a branch of the University of Cincinnati which is a publicly funded institution of higher education located in Cincinnati, Ohio. UC COM and/or the University of Cincinnati receive federal funds to assist in the financial support of their programs and operations.

## IV. STATEMENT OF THE CASE

7. Mr. Gayar began his medical education at UC COM in or about August 2012. He was enrolled in a four-year medical education program designed to award students with an MD (Doctor of Medicine) degree upon graduation.

8. At UC COM, a Performance and Advancement Committee (PAC) is established for each cohort of students upon their entry into the medical education program. Each PAC regularly reviews each student and may make recommendations on promotion, retention, dismissal, leaves of absence, and compliance with college standards.

9. Although Mr. Gayar successfully completed all of his academic case work in his first year of medical school, he exhibited difficulties in his academic assessments and examinations. At the same time, he consistently demonstrated proficiency and scored high marks in his clinical courses.

10. In his second year of medical school, Mr. Gayar continued to struggle in certain academic areas, and failed one M-2 course. As a result, Mr. Gayar received a Letter of Concern from the PAC along with a recommendation that he meet with an academic advisor to discuss various resources, guidance, and whatever assistance could be provided by the institution to help him achieve success as a medical student.

11. At the suggestion of his advisor, Mr. Gayar met with the Assistant Dean for Academic Support and Counseling, and made a concerted effort to readjust his study habits and time management practices to improve his academic performance. Even with these efforts, Mr. Gayar continued to struggle with his academic courses. As a result, in February of 2014, he was placed on a leave of absence by the PAC until the end of that academic year subject to the stipulation that he seek out and complete a study skills course. He was further required to reapply for readmission to the academic program. Mr. Gayar's readmission was conditioned upon him evidencing how he had resolved his academic issues related to his leave of absence.

12. In response to the actions of the PAC, Mr. Gayar successfully completed a study skills course recommended by the Assistant Dean. Additionally, upon his own initiative, he reviewed the course materials from his first and second year curriculum in order to gain a greater understanding of his own learning style. Mr. Gayar further engaged in both academic and clinical research activities in his time away from the education program. As a result of these efforts, Mr. Gayar earned readmission to the school and was permitted to complete his second year curriculum. Mr. Gayar's Letter of Concern was removed from his record.

13. Despite his efforts at self-remediation, Mr. Gayar once again experienced difficulty in passing practice tests in preparation for the mandatory Step 1 examination which was needed to continue his medical education. Because of these difficulties, Mr. Gayar requested and was granted a further leave of absence to extend his period of study for the Step 1 examination. Mr. Gayar was put on a second leave of absence in October 2015, subject once again to the stipulation that he must reapply for readmission and satisfy various intersession programs and other activities including continued meetings with the Assistant Dean to discuss his study strategies and progress.

14. Mr. Gayar was unsuccessful in his second attempt to pass the Step 1 exam, and in January of 2016, was placed on a mandatory leave of absence. On January 14, 2016, the PAC granted Mr. Gayar the opportunity to take the Step 1 exam a third time, following a self-directed study period, and continued interaction with the Assistant Dean.

15. On May 25, 2016, the PAC was informed that Mr. Gayar had attained a passing score on the Step 1 exam, and therefore approved his return to the third-year curriculum conditioned upon his compliance with student training requirements. As a

4

result, Mr. Gayar was subject to dismissal if he were to fail a course at the M-3 level. Once again, however, Mr. Gayar was unable to avoid academic difficulties and failed to complete two shelf exams during his third year. Due to these additional failures, the PAC informed Mr. Gayar on or about March 8, 2017 that it had recommended his dismissal for failure to meet the admission and retention policies for M-3 students.

16. Mr. Gayar had the right to appeal the aforementioned recommendation under UC COM's Academic Status Appeal Process as outlined in the Medical Student Handbook. The appeal of a recommendation by the PAC to dismiss a student is directed to the Senior Associate Dean of Academic Affairs. That official then constitutes an ad-hoc appeals panel whose members will come from the Academic Appeals Board (Appeals Board).

17. The Appeals Board is a standing committee consisting of ten faculty members. Each appeal is heard by a panel of three members of the Appeals Board. The official role of the Appeals Board is to determine whether the procedures outlined in the Student Handbook and the PAC Performance Standards and Procedures were substantially followed by the PAC and that its recommendation was reasonable. More specifically, the Appeals Board is charged with considering new information that is significantly different from that previously presented to the PAC and whether the student adequately justified why that information was not adequately presented to the PAC. Following a hearing, a panel of the Appeals Board makes a separate recommendation in writing to the Dean of UC COM who renders a final decision on a recommendation of dismissal by the PAC.

18. On March 14, 2017, Mr. Gayar filed a timely written appeal of the PAC's recommendation that he be dismissed. At his hearing, and in furtherance of his appeal,

5

Mr. Gayar presented evidence to the Appeals Board that following the recommendation of his dismissal at PAC, and at the suggestion of a representative of the Department of Student Affairs, he had sought medical guidance as to the nature and severity of any medical or psychological condition that may have affected his academic performance in the medical education program. Mr. Gayar also informed the Appeals Board that he had been referred by his psychiatrist to a private psychological service which had conducted a neuropsychological evaluation of Mr. Gayar to determine or rule out the presence of a psychological condition or disorder as a cause or contributing factor to the academic difficulties he had encountered during his medical school education. Mr. Gayar's test results affirmatively suggested the presence of Attention Deficit Disorder ("ADD"). Mr. Gayar further reported that he had been started on a psychostimulant medication to help improve his attention skills and that the psychiatrist had recommended that UC COM explore additional accommodations for Mr. Gayar to assist him in his performance such as extended testing time in a separate location.

19. On March 30, 2017, Mr. Gayar became registered as a student within the University's Disabilities Services Office and became eligible for reasonable accommodations in connection with his ADD.

20. On April 17, 2017, Mr. Gayar appeared before the Appeals Board to hear his appeal of the recommendation by the PAC for his dismissal from the medical program. Mr. Gayar advised the Appeals Board that in the opinion of his psychiatrist, his diagnosis of ADD "explains the reasons why he is having more difficulties now in medical school (as his studies were more focused and in depth) in comparison with earlier in his life." Accordingly, Mr. Gayar requested the Appeals Board to permit him to

resume his medical education subject to the terms of a reasonable accommodation suggested by his medical providers.

21. Notwithstanding this new information regarding Mr. Gayar's diagnosis and his request for a reasonable accommodation, the Appeals Board failed to engage in an interactive process to explore such an accommodation and summarily rejected Mr. Gayar's appeal for the sole and unqualified reason of "his inability to pass a number of his courses." In rendering its decision, the Appeals Board acknowledged that Mr. Gayar's diagnosis of ADD had not been available to the PAC when it issued its negative recommendation.

22. On April 28, 2017, the Dean of the College of Medicine issued a written notice to Mr. Gayar that he agreed with the recommendation of dismissal by the PAC and Appeals Board. As a result, Mr. Gayar was dismissed from the medical program effective immediately. In his final decision, the Dean made no reference to, much less evaluated, the substance of the new medical information regarding Mr. Gayar's diagnosis, the impact of his disability on his academic performance, or whether Mr. Gayar's disability could have been reasonably accommodated so as to allow him to resume his medical school career under the terms and conditions of the regimen suggested by Mr. Gayar's medical providers without compromising the mission or the operations of the College of Medicine.

23. Following his receipt of the Dean's final decision dismissing him from the College of Medicine, Mr. Gayar sought the opinion of a second psychiatrist, Robert Krikorian, a member of the UC Department of Psychology and Behavioral Neuroscience.

24. On April 28, 2017, Dr. Krikorian issued a written opinion confirming Mr. Gayar's diagnosis and adding that in his professional opinion, "Mr. Gayar's contention

7

that he had been able to compensate for inattention prior to medical school by extending extra effort and time is reasonable and, certainly, not atypical, especially for individuals who possess high intelligence and conscientiousness." He further opined, that, "[W]ith respect to academic performance, it would seem reasonable that learning efficiency and achievement on examinations would be enhanced with the stimulant therapy and provisions for extended time during examinations."

25. On May 17, 2017, Mr. Gayar, through his counsel, provided UC COM, through its legal counsel, a copy of Dr. Krikorian's written opinion and requested that UC COM reconsider the Dean's final decision dismissing Mr. Gayar from the College of Medicine. Shortly thereafter, counsel for UC COM advised that it was unwilling to reconsider Mr. Gayar's dismissal.

26. The actions of UC COM in dismissing Mr. Gayar from the medical school and in refusing to readmit him were committed intentionally, knowingly, and purposefully with a conscious and deliberate disregard for Mr. Gayar's rights under the ADA and RHA to be free from discrimination on account of his disability.

27. As a direct and proximate result of UC COM's refusal to grant him a reasonable accommodation for his disability by permitting him to reenter the medical education program under the terms of a reasonable accommodation, Mr. Gayar was (1) denied his rights under federal law to be free from discrimination on account of his disability, and (2) denied the opportunity to continue and complete his medical education, and (3) subjected to economic and noneconomic injuries.

## V. STATEMENT OF THE CLAIMS

### Count 1:

### Failure to Accommodate

28. Plaintiff incorporates paragraphs 1 through 27 as if fully rewritten herein.

29. UC COM violated Title II of the Americans with Disabilities Act and Section 504 Rehabilitation Act when it refused Mr. Gayar's request to accommodate his disability by permitting him to remain in and/or reenter the College of Medicine subject to the terms and conditions of said accommodation.

### Count 2:

### Disability Discrimination

30. Plaintiff incorporates paragraphs 1 through 29 as if fully rewritten herein.

31. UC COM intentionally discriminated against Mr. Gayar in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act by dismissing Mr. Gayar from the institution on account of his disability and/or in refusing to readmit him.

### PRAYER FOR RELIEF

Wherefore, Plaintiff Adam Gayar demands judgment against Defendant, University of Cincinnati College of Medicine, as follows:

1. For an order directing UC COM to reinstate Mr. Gayar as a student to the College of Medicine subject to terms and conditions that are appropriate under the circumstances;

2. For an award of compensatory damages for Mr. Gayar's economic and noneconomic injuries in an amount to be determined at trial;

3. For an award of Mr. Gayar's reasonable attorney fees and costs;

4. For an award of other relief in law and equity to which Mr. Gayar is entitled under the premises.

Respectfully submitted,

**MEZIBOV BUTLER**

/s/ Marc D. Mezibov_____
Marc D. Mezibov (OH No. 0019316)
Brian J. Butler (OH No. 0082675)
615 Elsinore Place
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
mmezibov@mezibov.com
bbutler@mezibov.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff Adam Gayar demands a jury trial to resolve all issues of fact related to his Complaint.

/s/ Marc D. Mezibov_____
Marc D. Mezibov (Ohio No. 0019316)
